UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| SUUNTO OY,<br><br>*Plaintiff*,<br><br>v.<br><br>GARMIN LTD. and<br>GARMIN INTERNATIONAL, INC.<br><br>*Defendants*. | Case No. 2:25-cv-00967-JRG<br><br>JURY TRIAL DEMANDED |
| GARMIN LTD., GARMIN<br>INTERNATIONAL, INC.,<br>GARMIN SWITZERLAND GMBH, and<br>GARMIN JYVÄSKYLÄ OY,<br><br>*Counterclaim-Plaintiffs*,<br><br>v.<br><br>SUUNTO OY and<br>DONGGUAN LIESHENG<br>ELECTRONIC TECHNOLOGY CO.,<br>LTD.,<br><br>*Counterclaim-Defendants*. |  |

## PLAINTIFF'S ANSWER TO GARMIN'S AMENDED COUNTERCLAIMS

Plaintiff Suunto Oy ("Suunto Oy," "Suunto" or "Plaintiff") answers herein Garmin Ltd., Garmin International, Garmin Switzerland GmbH and Garmin Jyväskylä Oy's (collectively "Garmin") counterclaims ("Counterclaims") in its Amended Answer and Counterclaims to Plaintiff's First Amended Complaint (Dkt. 43) with numbered paragraphs corresponding to like-numbered paragraphs of the Counterclaims as follows.

1

Suunto denies each and every allegation not expressly admitted herein. Garmin's Counterclaims purport to assert allegations against Dongguan Liesheng Electronic Technology Co., Ltd. ("Dongguan Liesheng"). Suunto responds only on its own behalf and lacks knowledge or information sufficient to form a belief as to allegations directed to Dongguan Liesheng, and therefore denies them on that basis.

**INTRODUCTION**

Suunto is, and has long been, a technological pioneer in outdoor and sports instrumentation. One clear example is Altimeter, Barometer, Compass ("ABC") outdoor watches, where Garmin entered after Suunto had already established an early presence. From the outset in 1936, when Finnish orienteer and engineer Tuomas Vohlonen founded Suunto to manufacture his patented liquid-filled handheld magnetic compasses, designed to give a steadier, more accurate needle for harsh Nordic conditions, the company has been an outdoor instrument specialist built around solving demanding technical problems before others entered the space. *See* https://www.suunto.com/About-Suunto/heritage/; https://us.suunto.com/pages/90th-anniversary-campaign.

In the 1970s and 1980s, Suunto extended this expertise from land to sea by developing instruments for divers and became a world leader in diving instruments, launching one of the first commercial dive computers, the Suunto SME-ML, in 1987. Independent histories note this early move into dive computing for the sport diving community. *See* https://www.mikesdivestore.com/blogs/mikes-london-dive-store-blog/suunto-90-years-of-precision-passion-and-dive-innovation; https://www.mikesdivestore.com/blogs/mikes-london-dive-store-blog/suunto-a-brief-history; https://xray-mag.se/content/suunto-turns-80-it-started-compass. In the 1990s, Suunto then moved beyond standalone gauges by adding a wired PC

2

interface to its dive computers so that users could transfer and analyze dive data on a personal computer, well before such connected data ecosystems became the norm in sports technology.

In 1998, Suunto set the tone again by bringing a new kind of outdoor "computer" to market. The Suunto Vector integrated an altimeter, barometer, and compass, the "ABC" combination, into a single watch and is widely recognized as the first ABC outdoor watch and the product that created the modern ABC outdoor watch category. *See* https://finance.yahoo.com/news/suunto-90-years-adventure-080000432.html; https://www.suunto.com/Products/sports-watches/Suunto-Vector/Suunto-Vector-Black/; https://en.wikipedia.org/wiki/Suunto. Only after Suunto had established this ABC watch-computer template did Garmin and other brands follow with their own multi-sensor outdoor watches built around the same core concept, entering a category Suunto had already pioneered.

Suunto then quickly moved to continue innovating within this ABC category by combining outdoor instrumentation with heart-rate measurement. In 1999, Suunto launched the Suunto Advizor, which integrated an altimeter, barometer, compass, and heart-rate monitor in a single wrist device for outdoor and training use. *See* https://ns.suunto.com/Manuals/Advizor/Pocketguide/Advizor_pocketguide_EN.pdf; https://www.opticsplanet.com/suunto-watches-advizor-compass-with-heart-rate-monitor.html.

In parallel, Suunto created more specialized product families that separated outdoor and training use cases while still pushing the underlying technology forward. On the training side, the Suunto t-series focused on performance and physiology rather than ABC features. In 2004, Suunto introduced the Suunto t6, an early performance watch that paired advanced heart-rate–based analytics with dedicated Training Manager PC software, allowing detailed analysis of training

load, recovery, and overall cardiovascular stress. *See* https://ns.suunto.com/Manuals/t6/Usermanuals/t6_Users_Manual_EN.pdf.

On the outdoor side, X-series products such as the Suunto X6HR were oriented around ABC functionality, combined with heart rate functionality. The X-series used a PC interface and Suunto Activity Manager PC software primarily for logging and viewing activity data rather than running the same type of Training Manager analytics used with the t6. *See* https://ns.suunto.com/Manuals/X6HR/Userguides/X6HR_userguide_EN.pdf.

Suunto played an early role in developing several underlying technologies that now underpin modern sports watches. In the late 1990s and early 2000s, it invested heavily in short-range low-power radio and GPS research, including work on compact GPS antenna solutions that later became the subject of patent filings over watch-based antenna structures. Suunto initiated research on and later worked with Dynastream Innovations on the first ultra-low-power ANT radio technology in the mid-2000s, helping to establish ANT as a core protocol for fitness sensors. Garmin acquired Dynastream and the ANT technology in or around 2006, consolidating a platform that Suunto had already helped to develop and deploy. *See* https://www.biospace.com/b-garmin-ltd-b-acquires-b-dynastream-innovations-inc-b-for-approximately-36-million. In parallel, Suunto participated alongside Nokia and others in low-power radio work that fed into Wibree, which Nokia then helped bring into the Bluetooth standard as Bluetooth Low Energy (Bluetooth Smart) in 2010. *See* https://www.nokia.com/blog/how-nokia-triggered-the-global-rise-of-bluetooth-le/. This laid the groundwork for the low-energy wireless connectivity that both Suunto and Garmin watches now rely on.

For roughly twenty years, Suunto worked with Finnish analytics company Firstbeat, integrating select fitness analytics into its performance watches. Suunto worked with Firstbeat on

research related to training and fitness technologies. Garmin chose to secure control of this shared analytics supplier through acquisition. According to Firstbeat, it was acquired by Garmin on June 30, 2020. *See* https://www.firstbeat.com/en/news/firstbeat-technologies-renews-focus-on-corporate-wellness-and-sports-as-firstbeat-licensing-business-is-acquired-by-garmin/. After that deal, under Garmin's ownership, Firstbeat terminated its licensing arrangement with Suunto.

## RESPONSES TO COUNTERCLAIMS

1.      In response to the allegations of Paragraph 1 of Garmin's Counterclaims, Suunto admits that Garmin purports to incorporate its statements and responses contained in its Answer. To the extent Garmin's incorporation requires a response, Suunto denies each and every allegation contained in Garmin's Answer that is inconsistent with Suunto's positions as set forth in the Amended Complaint (Dkt. 34) and/or Suunto's Counterclaim Responses as set forth herein, and further denies any allegation of wrongdoing on the part of Suunto.

## THE PARTIES

2.      In response to the allegations of Paragraph 2 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 2, and therefore denies them.

3.      In response to the allegations of Paragraph 3 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3, and therefore denies them.

4.      In response to the allegations of Paragraph 4 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 4, and therefore denies them.

5. In response to the allegations of Paragraph 5 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 5, and therefore denies them.

6. In response to the allegations of Paragraph 6 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 6, and therefore denies them.

7. In response to the allegations of Paragraph 7 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and therefore denies them.

8. In response to the allegations of Paragraph 8 of Garmin's Counterclaims, Suunto admits that it is a Finnish corporation with its principal place of business at Tammiston kauppatie 7 A, FI-01510 Vantaa, Finland. Suunto further admits that Dongguan Liesheng Electronic Technology Co., Ltd. owns 100% of Liesheng HK Limited, which in turn owns 100% of Suunto Oy. Suunto denies any remaining allegations of Paragraph 8. This admission is made solely for purposes of responding to Paragraph 8 and does not concede alter ego or agency.

9. In response to the allegations of Paragraph 9 of Garmin's Counterclaims, Suunto admits that Dongguan Liesheng is a Chinese corporation with its headquarters at 4/F, Building A, Nanxin Industrial Park, No.86, Hongtu Road, Nancheng District, Dongguan City, Guangdong Province, China.

## JURISDICTION AND VENUE

10. In response to the allegations of Paragraph 10 of Garmin's Counterclaims, Suunto asserts that this paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, in response to the allegations of Paragraph 10 of Garmin's Counterclaims, Suunto admits that Garmin purports to assert counterclaims arising under the

patent laws of the United States, including 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. For purposes of these Counterclaims only, Suunto does not contest that this Court has subject matter jurisdiction over this action. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 10.

11.    In response to the allegations of Paragraph 11 of Garmin's Counterclaims, Suunto asserts that this paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, and for purposes of these Counterclaims only, Suunto does not contest that a controversy exists between the parties regarding Counterclaim-Plaintiffs' allegations of infringement of the Asserted Garmin Patents (defined by Garmin to include U.S. Patent Nos. 10,271,299, 10,276,925 (the "'925 Patent"), 10,856,794 (the "'794 Patent"), 11,318,351 (the "'351 Patent"), and 11,956,874 (the "'874 Patent")) and Garmin's allegations regarding non-infringement and invalidity of the Asserted Suunto Patents. Suunto denies that Counterclaim-Plaintiffs are entitled to any declaratory or other relief requested in their Counterclaims. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 11.

12.    In response to the allegations of Paragraph 12 of Garmin's Counterclaims, Suunto asserts that this paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, and for purposes of these Counterclaims only, Suunto does not contest that this Court may exercise personal jurisdiction over it in this action. Suunto denies the remaining allegations of Paragraph 12, including any allegation of infringement, and denies Garmin's characterizations of the Accused Suunto Products. Suunto further states that it has not sold or imported the Ambit3 Vertical in or into the United States since 2020. Suunto further states that certain functionalities of the Ambit3 Vertical were developed pursuant to a license agreement with Firstbeat Technologies Oy, which that entity purported to terminate effective as of December

20, 2023. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 12.

13.    In response to the allegations of Paragraph 13 of Garmin's Counterclaims, Suunto asserts that this paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, and for purposes of these Counterclaims only, Suunto does not contest that this Court may exercise personal jurisdiction over it in this action. Suunto admits that certain of its products are offered for sale at retail locations within this District, including at REI in Plano, Texas. Suunto further admits that certain of its products are available for purchase through its website. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 13.

14.    In response to the allegations of Paragraph 14 of Garmin's Counterclaims, Suunto asserts that this paragraph states a legal conclusion for which no response is required. To the extent a response is deemed required, and for purposes of these Counterclaims only, Suunto does not contest that venue is proper in this District. Suunto denies that it infringes or has infringed any valid and enforceable claim of any patent asserted by Garmin. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 14.

15.    In response to the allegations of Paragraph 15 of Garmin's Counterclaims, Suunto asserts that this paragraph states a legal conclusion for which no response is required. Suunto further states that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is deemed required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 and, on that basis, denies them. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 15.

16.     In response to Paragraph 16 of Garmin's Counterclaims, Suunto states that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

17.     In response to Paragraph 17 of Garmin's Counterclaims, Suunto states that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

18.     In response to Paragraph 18 of Garmin's Counterclaims, Suunto states that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

## BACKGROUND

19.     In response to the allegations of Paragraph 19 of Garmin's Counterclaims, Suunto denies that "it has followed Garmin's advances" as alleged and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, which are therefore denied.

20.     In response to the allegations of Paragraph 20 of Garmin's Counterclaims, Suunto denies the allegations contained therein.

21.     In response to the allegations of Paragraph 21 of Garmin's Counterclaims, Suunto states that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore denies them.

22.     In response to the allegations of Paragraph 22 of Garmin's Counterclaims, Suunto denies that Garmin has cooperated with Suunto and that said cooperation ended with Suunto's lawsuit. Suunto admits that Dongguan Liesheng acquired Suunto in 2022 and that following that acquisition some employees were let go. Suunto also admits that certain production and design activities were moved to China. Suunto denies the remaining allegations of Paragraph 22.

23.     In response to the allegations of Paragraph 23 of Garmin's Counterclaims, Suunto admits that Garmin holds patents relating to various smartwatch features. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 23 and therefore denies them.

24.     In response to the allegations of Paragraph 24 of Garmin's Counterclaims, Suunto admits that Garmin cites and links to a webpage containing the quoted language. To the extent Paragraph 24 purports to characterize the content of referenced or publicly available materials, those materials speak for themselves, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and therefore denies them.

25.     In response to the allegations of Paragraph 25 of Garmin's Counterclaims, Suunto admits that Suunto is a Finnish brand that sells fitness watches, and that Suunto announced a GPS-enabled watch in 2002 and launched a GPS-enabled watch by early 2003. Suunto denies Garmin's characterization of the timing and significance of that launch relative to Garmin's products and further states that Garmin publicly reported that it launched its first GPS smartwatch in 2003. *See* https://ph.garmin.com/news/press-release/news-2023-may-fr-20/. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 25.

10

26.    In response to the allegations of Paragraph 26 of Garmin's Counterclaims, Suunto denies the allegations contained therein.

27.    In response to the allegations of Paragraph 27 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief as to when Garmin launched its alleged companion web platform and therefore denies those allegations. Suunto further states that it launched a companion web platform, SuuntoSports.com, in 2002, which predates Garmin's alleged 2007 launch. See https://www.prnewswire.com/apac/news-releases/suunto-90-years-of-adventure-302678602.html. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 27.

28.    In response to Paragraph 28 of Garmin's Counterclaims, Suunto admits that it launched its first smartwatch with an optical heart rate sensor in early 2017. Suunto lacks knowledge or information sufficient to form a belief as to the truth of Garmin's allegation regarding its own launch, and on that basis denies it. Suunto denies any remaining allegations in Paragraph 28.

29.    In response to the allegations of Paragraph 29 of Garmin's Counterclaims, Suunto lacks knowledge or information sufficient to form a belief as to the truth of Garmin's allegations regarding Garmin Connect IQ and therefore denies those allegations. Suunto further states that it released its Movescount app in July 2014, which predates Garmin's alleged 2015 launch, and denies any characterization that it followed Garmin in this regard. *See* https://gearjunkie.com/endurance/running/suunto-ambit3-upgrades-popular-fitness-watch#:~:text=Suunto%20watch:%20syncs%20with%20phone%2C%20app%20makes%20'Movie'%20of%20your%20training%20route. Suunto denies the remaining allegations of Paragraph 29.

30.    In response to Paragraph 30 of Garmin's Counterclaims, Suunto admits that Garmin cites and provides a link to a webpage stating that Garmin Pay was launched in 2017. To the extent Paragraph 30 purports to characterize the content of referenced or publicly available materials, those materials speak for themselves, and Suunto does not adopt Garmin's characterization thereof. Suunto further states that contactless payment features were available for use with a subset of its smartwatches by at least 2018. See https://www.fintechfutures.com/contactless-payments/bpay-teams-with-seven-brands-to-launch-contactless-payment-watches. Suunto further states that a subset of its smartwatches worked with Google Pay by 2020. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 30.

31.    In response to Paragraph 31 of Garmin's Counterclaims, Suunto admits that Garmin cites and provides a link to a webpage stating that Garmin fēnix 6X Pro Solar was announced in 2019. To the extent Paragraph 31 purports to characterize the content of referenced or publicly available materials, those materials speak for themselves, and Suunto does not adopt Garmin's characterization thereof. Suunto further admits that it announced the Suunto Vertical Solar in 2023. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 31.

32.    In response to Paragraph 32 of Garmin's Counterclaims, Suunto admits that Garmin cites and provides a link to a webpage stating that Garmin announced a product incorporating AMOLED display technology in 2019. To the extent Paragraph 32 purports to characterize the content of referenced or publicly available materials, those materials speak for themselves, and Suunto does not adopt Garmin's characterization thereof. Suunto further admits that it announced a product incorporating AMOLED display technology in or about January 2020. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 32.

33.    In response to Paragraph 33 of Garmin's Counterclaims, Suunto admits that Garmin cites a webpage stating that Garmin fēnix 7X was launched in 2022 with an integrated flashlight. To the extent Paragraph 33 purports to characterize the content of referenced or publicly available materials, those materials speak for themselves, and Suunto does not adopt Garmin's characterization thereof. Suunto denies the allegation that the Garmin fēnix 7X was met with "universally rave reviews." *See, e.g.*, https://forums.garmin.com/outdoor-recreation/outdoor-recreation/f/fenix-7-series/333212/fenix-7x-sapphire-solar-flashlight-just-stopped-working; https://forums.garmin.com/outdoor-recreation/outdoor-recreation/f/fenix-7-series/282662/f7x-why-did-they-add-this-flashlight; https://forums.garmin.com/outdoor-recreation/outdoor-recreation/f/fenix-7-series/285117/fenix-7x-freezing-glitching-when-using-flashlight-outdoors-in-sunlight/1438404. Suunto further admits that it released the Suunto Vertical 2, which incorporated a flashlight, in 2025. Suunto further states that it released the Suunto Traverse in 2015, which used a backlight to provide a flashlight feature. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 33.

34.    In response to the allegations of Paragraph 34 of Garmin's Counterclaims, Suunto admits that it was sold by Amer Sports in 2022 to Dongguan Liesheng. Suunto denies Garmin's characterization that it has engaged in a "pattern of following" Garmin's alleged innovations. Suunto denies all remaining allegations of Paragraph 34.

35.    In response to the allegations of Paragraph 35 of Garmin's Counterclaims, Suunto admits that Dongguan Liesheng Electronic Technology Co., Ltd. acquired Suunto Oy from Amer Sports Corporation in 2022. Suunto further admits that, following that acquisition, it has launched the following nine smartwatches in or around the following dates: the Suunto Vertical (May 2023), Suunto Race (October 2023), Suunto Ocean (June 2024), Suunto Race S (June 2024), Suunto Run

(May 2025), Suunto Race 2 (August 2025), Suunto Vertical 2 (September 2025), Nautic (November 2025) (a large-format dive computer), and Nautic S (November 2025). Suunto admits that Garmin's Counterclaims cite webpages that list or describe certain Garmin smartwatch product releases. Suunto denies Garmin's characterization of those materials, including any allegation regarding the respective number, nature, or significance of such releases. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 35.

36.     In response to the allegations of Paragraph 36 of Garmin's Counterclaims, Suunto admits that it filed this action in 2025 and denies that it filed this action "this year." Suunto denies the remaining allegations of Paragraph 36.

37.     In response to the allegations of Paragraph 37, Suunto asserts that this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Suunto admits that U.S. Patent No. 7,271,774 expired on October 21, 2025; that U.S. Patent No. 7,489,241 expires on September 7, 2026; that U.S. Patent No. 8,021,306 expires on May 12, 2026; and that U.S. Patent No. 10,734,731 expires on March 11, 2033. Suunto further admits that U.S. Patent No. 11,018,432 has an expiration date of February 6, 2039, but states that this patent is no longer asserted in this action. Suunto denies all remaining allegations of Paragraph 37.

38.     In response to the allegations of Paragraph 38 of Garmin's Counterclaims, Suunto denies Garmin's characterization of the asserted patents as "obsolete" and denies the remaining allegations of Paragraph 38.

39.     In response to the allegations of Paragraph 39 of Garmin's Counterclaims, Suunto denies the allegations of said paragraph.

40.     In response to the allegations of Paragraph 40 of Garmin's Counterclaims, Suunto admits that it has accused certain Garmin products of infringing U.S. Patent Nos. 7,489,241;

14

8,021,306; 7,271,774; and 10,734,731, as set forth in its infringement contentions, as they may be amended in accordance with the Court's rules. Suunto denies any additional allegations of Paragraph 40.

41.    In response to Paragraph 41 of Garmin's Counterclaims, Suunto denies the allegation that Garmin Ltd. did not develop, and does not engage in the manufacture, use, offer for sale, sale, and/or importation into the United States of the Accused Garmin Products. Suunto further denies the allegation that the Accused Garmin Products involve only the work of Garmin International, Inc. and other wholly owned subsidiaries, including Garmin Oy and Garmin Switzerland Ltd. Suunto further states that Garmin Ltd. publicly represents that it and its subsidiaries collectively design, develop, manufacture, market, and distribute such products. For example, Garmin Ltd.'s 2024 Form 10-K states that "Garmin Ltd. and its subsidiaries (collectively, the Company or Garmin) design, develop, manufacture, market, and distribute" such products. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 41.

42.    In response to Paragraph 42 of Garmin's Counterclaims, Suunto admits that Garmin Ltd.'s 2024 Form 10-K contains statements describing the role of Garmin International, Inc., including statements that it is "primarily responsible" for sales and marketing of the Company's products in the Americas region and for most of the Company's research and new product development. To the extent Paragraph 42 purports to characterize the contents of that filing, the filing speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Suunto further states that the same Form 10-K represents that "Garmin Ltd. and its subsidiaries (collectively, the Company or Garmin) design, develop, manufacture, market, and distribute" such products. Suunto admits that, based on its current knowledge, Garmin International, Inc. imports products into the United States, but lacks knowledge or information sufficient to form a belief as

15

to whether it imports all of the Accused Garmin Products or is the sole importer of such products and, on that basis, denies that allegation. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 42.

43.    In response to the allegations of Paragraph 43 of Garmin's Counterclaims, Suunto admits that publicly available statements, including Garmin Ltd.'s 2024 Form 10-K, indicate that Garmin International, Inc. is primarily responsible for sales and marketing activities in the Americas region, which includes the United States. Suunto further states that Garmin Ltd.'s 2024 Form 10-K represents that "Garmin Ltd. and its subsidiaries (collectively, the Company or Garmin) design, develop, manufacture, *market*, and distribute" its products. (emphasis added). Suunto admits that, to its current knowledge, Garmin International, Inc. engages in marketing and sales activities for Garmin products in the United States. However, Suunto lacks knowledge or information sufficient to form a belief as to whether Garmin International, Inc. is solely responsible for all marketing and sales of the Accused Garmin Products in the United States, or whether Garmin Ltd. or other affiliated entities also engage in such activities, and on that basis denies that allegation. Suunto denies any remaining allegations of Paragraph 43.

44.    In response to the allegations of Paragraph 44 of Garmin's Counterclaims, Suunto admits that certain Accused Garmin Products identified in Suunto's infringement contentions include respiration-related functionality. Suunto further admits that assignment records reflect that U.S. Patent Nos. 10,856,794 and 11,318,351 were assigned to Firstbeat Technologies Oy, subsequently assigned to Firstbeat Analytics Oy, and later assigned to Garmin Jyväskylä Oy. To the extent Paragraph 44 alleges or implies that Suunto infringes any patent, Suunto denies that it infringes or has infringed any valid and enforceable claim of the patents identified therein. Suunto

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 44 and, on that basis, denies them.

45.     In response to the allegations of Paragraph 45 of Garmin's Counterclaims, Suunto admits that certain Accused Garmin Products identified in Suunto's infringement contentions include antenna-related functionality. Suunto further admits that assignment records reflect that U.S. Patent Nos. 10,271,299 and 10,276,925 were assigned to Garmin Switzerland GmbH. To the extent Paragraph 45 alleges or implies that Suunto infringes any patent, Suunto denies that it infringes or has infringed any valid and enforceable claim of the patents identified therein. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45 and, on that basis, denies them.

46.     In response to the allegations of Paragraph 46 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 11,956,874, titled "Wearable Device with Integrated Flashlight," identifies Garmin International, Inc. as the assignee on the face of the patent. To the extent Paragraph 46 alleges or implies that Suunto infringes any patent, Suunto denies that it infringes or has infringed any valid and enforceable claim of the patent identified therein. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 46 and, on that basis, denies them.

47.     In response to the allegations of Paragraph 47 of Garmin's Counterclaims, Suunto denies the allegations therein.

**GARMIN'S PATENTS-IN-SUIT AND THE INFRINGING TECHNOLOGY**

48.     In response to the allegations of Paragraph 48 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,271,299 is entitled "Conductive Watch Housing with Slot Antenna Configuration" and that U.S. Patent No. 10,276,925 is entitled "Watch with Slot Antenna Configuration." Suunto further admits that Garmin has attached purported copies of the '299

Patent and the '925 Patent as Exhibits 2 and 3 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 48 and, on that basis, denies them.

49.     In response to the allegations of Paragraph 49 of Garmin's Counterclaims, Suunto admits that the face of U.S. Patent No. 10,271,299 reflects the stated issue date, application number, filing date, and identifies Abu T. Sayem and Matthew L. Russell as the named inventors and Garmin Switzerland GmbH as the assignee. Suunto further admits that Garmin has attached a purported assignment abstract and record for the '299 Patent as Exhibit 4 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 49 and, on that basis, denies them.

50.     In response to the allegations of Paragraph 50 of Garmin's Counterclaims, Suunto admits that the face of U.S. Patent No. 10,276,925 reflects the stated issue date, application number, filing date, and identifies Yaoxuan Han, Adam B. Rasmussen, Christopher J. Hanshew, and Kevin M. Hansen as the named inventors and Garmin Switzerland GmbH as the assignee. Suunto further admits that Garmin has attached a purported assignment abstract and record for the '925 Patent as Exhibit 5 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 50 and, on that basis, denies them.

51.     In response to the allegations of Paragraph 51 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,271,299 issued on April 23, 2019; U.S. Patent No. 10,276,925 issued on April 30, 2019, and U.S. Patent No. 10,734,731 issued on August 4, 2020. Suunto denies any remaining allegations of Paragraph 51.

52.    In response to Paragraph 52 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,271,299 and U.S. Patent No. 10,276,925 contain the quoted language referenced in Paragraph 52. To the extent Paragraph 52 purports to characterize the contents, scope, or significance of those patents beyond their express language, the patents speak for themselves, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 52.

53.    In response to Paragraph 53 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,271,299 contains the quoted language referenced in Paragraph 53. To the extent Paragraph 53 purports to characterize the contents, scope, or significance of the U.S. Patent No. 10,271,299 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 53.

54.    In response to Paragraph 54 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,276,925 contains the quoted language referenced in Paragraph 54. To the extent Paragraph 54 purports to characterize the contents, scope, or significance of the U.S. Patent No. 10,276,925 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 54.

55.    In response to the allegations of Paragraph 55 of Garmin's Counterclaims, Suunto admits that certain Suunto-branded products, including the Suunto Vertical, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race 2, Suunto Race, Suunto Race S, and Suunto Vertical 2, are designed to be worn on a user's wrist and include GPS functionality. Suunto further admits that certain Suunto-branded products are sold in the United States by Suunto Oy and/or Suunto USA, Inc.

Suunto denies that allegations based on "information and belief" establish any additional facts beyond those expressly admitted herein. To the extent Paragraph 55 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 55.

56.     In response to the allegations of Paragraph 56 of Garmin's Counterclaims, Suunto denies that Paragraph 56 defines what Garmin contends constitutes a "slot antenna design," "bezel made of conductive material," or "side wall made of non-conductive material;" and, in the absence of such definitions, Suunto denies that any of the identified Suunto products uses any of those features. To the extent those features reference or are derived from asserted claim limitations, Suunto denies that Garmin has shown that any accused product satisfies any such limitation. Suunto further denies that Paragraph 56 identifies any structure in the accused products that corresponds to any of the stated features. To the extent Paragraph 56 purports to characterize Suunto's confidential information or other materials, those materials speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 56 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 56.

57.     In response to the allegations of Paragraph 57 of Garmin's Counterclaims, Suunto states that to the extent Paragraph 57 purports to characterize Suunto's confidential information or other materials, including statements at one time available at https://us.suunto.com/products/suunto-vertical-2-all-black, those materials speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto admits that the website https://us.suunto.com/products/suunto-vertical-2-all-black has at some point stated "Bezel

material: Stainless steel" and "Case material: Glass fibre reinforced polyamide." Suunto further admits that the Suunto Vertical 2 includes a printed circuit board and a GPS receiver. Suunto denies that Paragraph 57 identifies any structure in the Suunto Vertical 2 that corresponds to a "sidewall made from glass fiber reinforced polyamide," and denies that it is clear from the cited materials what component, if any, Garmin is referring to. Suunto denies that Paragraph 57 defines what Garmin contends constitutes a "slot antenna," "side wall," or "electrical ground points;" and, in the absence of such definitions, Suunto denies that the Suunto Vertical 2 has a "slot antenna" as described in Paragraph 57, including one allegedly "formed by the space between the electrical ground points (i.e., "pogo pins") that connect the printed circuit board of the Suunto Vertical 2 to the conductive bezel." To the extent Paragraph 57 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 57.

58.    In response to the allegations of Paragraph 58 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,856,794 is entitled "Method and System for Determining the Fitness Index of a Person" and that U.S. Patent No. 11,318,351 is entitled "Method to Determine Body's Physiological Response to Physical Exercise for Assessing Readiness and to Provide Feedback and System for Implementing the Method." Suunto further admits that Garmin has attached purported copies of the '794 Patent and the '351 Patent as Exhibits 6 and 7 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 58 and, on that basis, denies them.

59.    In response to the allegations of Paragraph 59 of Garmin's Counterclaims, Suunto admits that the face of U.S. Patent No. 10,856,794 identifies the stated issue date, application

21

number, filing date, and names Sami Saalasti and Aki Pulkkinen as the inventors and Garmin Jyväskylä Oy as the assignee. Suunto further admits that Garmin has attached a purported assignment abstract and record for the '794 Patent as Exhibit 8 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 59 and, on that basis, denies them.

60.     In response to the allegations of Paragraph 60 of Garmin's Counterclaims, Suunto admits that the face of U.S. Patent No. 11,318,351 identifies the stated issue date, application number, filing date, and names Aki Pulkkinen, Sami Saalasti, and Kaisa Hamalainen as the inventors and Garmin Jyväskylä Oy as the assignee. Suunto further admits that Garmin has attached a purported assignment abstract and record for the '351 Patent as Exhibit 9 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 60 and, on that basis, denies them.

61.     In response to Paragraph 61 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 10,856,794 contains language substantially similar to the quoted material set forth in Paragraph 61. To the extent Paragraph 61 purports to characterize the contents, scope, or significance of the U.S. Patent No. 10,856,794 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 61.

62.     In response to Paragraph 62 of Garmin's Counterclaims, Suunto admits that the abstract of U.S. Patent No. 10,856,794 contains language substantially similar to the quoted material set forth in Paragraph 62. To the extent Paragraph 62 purports to characterize the contents,

22

scope, or significance of U.S. Patent No. 10,856,794 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 62.

63.     In response to Paragraph 63 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 11,318,351 contains language substantially similar to the quoted material set forth in Paragraph 63. To the extent Paragraph 63 purports to characterize the contents, scope, or significance of U.S. Patent No. 11,318,351 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 63.

64.     In response to Paragraph 64 of Garmin's Counterclaims, Suunto admits that the abstract of U.S. Patent No. 11,318,351 contains the quoted language, "a method and a system for determining body's readiness to respond to physical exercise and for providing feedback to a user." To the extent Paragraph 64 purports to characterize the contents, scope, or significance of U.S. Patent No. 11,318,351 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 64.

65.     In response to Paragraph 65 of Garmin's Counterclaims, Suunto admits that, prior to filing this action, it entered into one or more technology license agreements with Firstbeat Technologies Oy. Suunto denies that those agreements expressly referenced U.S. Patent No. 10,856,794 or U.S. Patent No. 11,318,351. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 65 and, on that basis, denies them.

23

66.     In response to the allegations of Paragraph 66 of Garmin's Counterclaims, Suunto admits that it entered into a license agreement with Firstbeat Technologies Oy in 2003. Suunto denies that Garmin Oy or Firstbeat Analytics Oy was a party to that 2003 agreement. Suunto further admits that the 2003 license agreement included an appendix which addressed the software referenced in this request. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 66 and, on that basis, denies them.

67.     In response to Paragraph 67 of Garmin's Counterclaims, Suunto admits that it entered into a license agreement in 2005 with Firstbeat Technologies Oy. Suunto denies that Garmin Oy or Firstbeat Analytics Oy was a party to that 2005 agreement. Suunto further admits that the agreement included a module referred to as "Rasituskertymä (EPOC)." Suunto further admits that an appendix to that agreement states that inputs to that analysis include "Korjaamaton sykeväli-intervalli vektori," which Suunto understands to refer to RR-interval data. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67, including allegations concerning the content, characterization, or significance of the referenced 2005 white paper, and on that basis denies them.

68.     In response to Paragraph 68 of Garmin's Counterclaims, Suunto admits that it entered into a technology agreement in 2017 with Firstbeat Technologies Oy. Suunto denies that Garmin Oy or Firstbeat Analytics Oy was a party to that 2017 agreement. Suunto further denies that the agreement explicitly referenced U.S. Patent No. 10,856,794 or U.S. Patent No. 11,318,351. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 68 and, on that basis, denies them.

69.     In response to Paragraph 69 of Garmin's Counterclaims, Suunto admits that, after licensing technology from Firstbeat Technologies Oy, it incorporated certain licensed software

relating to physical activity and sports performance analysis into certain products. Suunto further admits that the cited 2004 manual for the Suunto t6 contains language substantially similar to that referenced in Paragraph 69 in a German-language version of the manual. To the extent Paragraph 69 purports to characterize the contents or significance of that manual beyond its express language, the manual speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 69.

70.     In response to the allegations of Paragraph 70 of Garmin's Counterclaims, Suunto responds that during prosecution of the '306 Patent, Suunto identified an EPOC Based Training Effect Assessment white paper by Firstbeat Technologies, Ltd. (Sep. 2005) in an information disclosure statement, and that the '306 Patent lists that paper on its face. Suunto denies any additional allegations or characterizations in Paragraph 70.

71.     In response to the allegations of Paragraph 71 of Garmin's Counterclaims, Suunto denies the allegations that Firstbeat / Garmin Oy developed the technology of the '306 Patent and that Suunto did not invent the subject matter of the '306 Patent. Suunto further responds that, during prosecution of the '306 Patent, the examiner considered prior art including the EPOC Based Training Effect Assessment white paper by Firstbeat Technologies Ltd. (Sep. 2005) and determined that the claims of the '306 Patent were patentable over cited prior art. Suunto denies any remaining allegations of Paragraph 71.

72.     In response to the allegations of Paragraph 72 of Garmin's Counterclaims, Suunto admits that Firstbeat Analytics Oy purported to terminate Suunto's 2017 license agreement with it as of December 20, 2023, and that the license was not renewed. To the extent Paragraph 72 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies any remaining allegations of Paragraph 72.

25

73.     In response to the allegations of Paragraph 73 of Garmin's Counterclaims, Suunto denies that, following the termination of the 2017 license agreement with Firstbeat Technologies Oy, it has engaged in the manufacture, use, offer for sale, sale, and/or importation into the United States of products that practice, embody, or infringe U.S. Patent Nos. 10,856,794 and 11,318,351, including the products identified in Paragraph 73. Suunto further states that it has not sold or imported the Ambit3 Vertical in or into the United States since 2020. Suunto further states that certain functionalities in the Ambit3 Vertical were developed pursuant to a license agreement with Firstbeat Technologies Oy, which that entity purported to terminate effective as of December 20, 2023. Suunto denies any remaining allegations of Paragraph 73.

74.     In response to the allegations of Paragraph 74, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical are capable of determining a cardiorespiratory fitness metric, such as VO$_2$max. Suunto further admits that the Ambit3 Vertical is capable of determining and displaying a running performance level. To the extent Paragraph 74 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 74.

75.     In response to the allegations of Paragraph 75 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 may be worn on the user's wrist and can measure a user's heart rate. Suunto further admits that the Suunto Vertical 2 allows users to view intensity zones during exercise. Suunto further admits that the Suunto Vertical 2 calculates a Training Stress Score, which is based on the duration and an intensity (heart-rate based or external workload based) of a training session, and that it may calculate a user's fitness level (VO2max). Suunto further admits that the

26

Suunto Vertical 2 includes a progress widget that "provides you with data that helps you to increase your training load over a longer period of time, whether it is the training frequency, duration or intensity." Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 75 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 75.

76. In response to the allegations of Paragraph 76 of Garmin's Counterclaims, Suunto denies the allegations contained in Paragraph 76 of Garmin's Counterclaims, including the allegations that Suunto infringes the '306 Patent or that technology of the '306 Patent migrated from Suunto to Dongguan Liesheng's products. Suunto denies any remaining allegations of Paragraph 76.

77. In response to the allegations of Paragraph 77 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 77 and, on that basis, denies them.

78. In response to the allegations of Paragraph 78 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and, on that basis, denies them.

79. In response to Paragraph 79 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 11,956,874 is entitled "Wearable Device with Integrated Flashlight." Suunto further admits that Garmin attached a purported copy of U.S. Patent No. 11,956,874 as Exhibit 10 to its

27

Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 79.

80.    In response to the allegations of Paragraph 80 of Garmin's Counterclaims, Suunto admits that the face of U.S. Patent No. 11,956,874 reflects the stated issue date, application number, filing date, and identifies Jonathan R. Hosler, Aaron J. Lindh, Steven J. Christy, Vincent G. Marco, Thomas I. Loschen, Brent E. Barberis, and Hans K. Fritze as the named inventors and Garmin International, Inc. as the assignee. Suunto further admits that Garmin has attached a purported assignment for U.S. Patent Application No. 17/659,747 and continuations of said application to Garmin International, Inc. as Exhibit 11 to Garmin's Amended Answer and Counterclaims to Plaintiff's First Amended Complaint. Suunto lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations of Paragraph 80 and, on that basis, denies them.

81.    In response to Paragraph 81 of Garmin's Counterclaims, Suunto admits that the abstract of U.S. Patent No. 11,956,874 contains the quoted language referenced in Paragraph 81. To the extent Paragraph 81 purports to characterize the contents, scope, or significance of U.S. Patent No. 11,956,874 beyond its express language, the patent speaks for itself, and Suunto does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 81.

82.    In response to Paragraph 82 of Garmin's Counterclaims, Suunto admits that U.S. Patent No. 11,956,874 contains the quoted language referenced in Paragraph 82. To the extent Paragraph 82 purports to characterize that language or the alleged limitations of existing devices beyond the express language of U.S. Patent No. 11,956,874, the patent speaks for itself, and Suunto

does not adopt Garmin's characterization thereof. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 82.

83.     In response to the allegations of Paragraph 83 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical, Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race 2, Suunto Race, Suunto Race S, Suunto Run, Suunto Vertical 2, and Suunto x Mammut Vertical can be worn on a user's wrist. Suunto further admits that the Suunto Vertical 2 includes an LED flashlight. Suunto further admits that the Suunto Vertical, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race 2, Suunto Race, Suunto Race S, Suunto Run, Suunto Vertical 2, and Suunto x Mammut Vertical include a backlight-based flashlight feature. Suunto further states that it released the Suunto Traverse, which used a backlight to provide a flashlight feature, in 2015. Suunto admits that certain Suunto products have been sold and/or imported into the United States by Suunto Oy and/or Suunto USA, Inc. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 83.

84.     In response to the allegations of Paragraph 84 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 can be worn on a user's wrist and includes an LED flashlight. Suunto further admits that users can adjust the brightness, light color, and mode of the flashlight, but expressly denies that individual LEDs can change color and that a user can adjust the brightness of all individual LEDs. To the extent Paragraph 84 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

## COUNTERCLAIM COUNT I
### (SUUNTO'S INFRINGEMENT OF THE '299 PATENT)

29

85. In response to the allegations of Paragraph 85 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

86. In response to the allegations of Paragraph 86 of Garmin's Counterclaims, Suunto denies that it has made, used, offered for sale, sold, or imported any product that infringes any claim of U.S. Patent No. 10,271,299, whether literally or under the doctrine of equivalents, and denies any remaining allegations of Paragraph 86.

87. In response to the allegations of Paragraph 87 of Garmin's Counterclaims, Suunto denies that it has induced or contributed to infringement of any claim of U.S. Patent No. 10,271,299 under 35 U.S.C. § 271(b), whether literally or under the doctrine of equivalents, and denies any remaining allegations of Paragraph 87.

88. In response to the allegations of Paragraph 88 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that it has induced infringement of any claim of U.S. Patent No. 10,271,299 under 35 U.S.C. § 271(b), including by instructing, recommending, encouraging, and/or suggesting that any third party practice any claim of the '299 Patent. Suunto further denies that it has provided any instructions, recommendations, encouragement, or suggestions that result in the practice of any asserted claim, or that it had the requisite knowledge or intent to induce infringement. To the extent Paragraph 88 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 88.

89. In response to the allegations of Paragraph 89 of Garmin's Counterclaims, Suunto admits that, during prosecution of certain of its own patent applications, the '299 Patent was cited

by the United States Patent and Trademark Office and was identified in an information disclosure statement, and that Suunto was aware of the '299 Patent in connection with those patent prosecution activities. Suunto denies that such circumstances establish that Suunto had knowledge of the '299 Patent for any purpose other than in connection with its patent prosecution activities, including any knowledge sufficient to support the allegations asserted by Garmin. To the extent Paragraph 89 relies on or characterizes documents from patent prosecution, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 89 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 89.

90.     In response to the allegations of Paragraph 90 of Garmin's Counterclaims, Suunto denies the allegations of said paragraph.

91.     In response to the allegations of Paragraph 91 of Garmin's Counterclaims, Suunto admits that Claim 1 of U.S. Patent No. 10,271,299 contains the language quoted in Paragraph 91. Suunto denies any remaining allegations of Paragraph 91.

92.     In response to the allegations of Paragraph 92 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

93.     In response to the allegations of Paragraph 93 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include electronic components and may be worn on a user's wrist. Suunto further admits that it has described the Suunto Vertical 2 as an "adventure watch" that includes, among other electronic components, an AMOLED display. To the extent Paragraph 93 relies on or characterizes publicly

31

available materials or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies that allegations based on "information and belief" or citations to publicly available materials establish that the accused products meet the preamble or any purported construction thereof. To the extent Paragraph 93 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 93.

94. In response to the allegations of Paragraph 94 of Garmin's Counterclaims, Suunto denies that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical each have "a lower housing including a lower surface, a printed circuit board positioned above the lower surface, and a side wall formed of electrically conductive material, the side wall having a top surface including a plurality of electrical ground terminals," as alleged. Suunto admits that the Suunto Vertical 2 includes a metal caseback having various surfaces, a housing or case, and an internal cavity, but denies that it includes a side wall formed of electrically conductive material having a top surface that includes a plurality of electrical ground terminals. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 94 purports to characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 94.

95. In response to the allegations of Paragraph 95 of Garmin's Counterclaims, Suunto denies that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include "an

upper housing opposing the lower housing, the upper housing including a bezel formed of an electrically conductive material, the bezel having a lower surface corresponding to the top surface of the side wall and two electrical ground locations electrically coupled to two of the plurality of electrical ground terminals on the top surface of the side wall," as alleged. Suunto admits that the Suunto Vertical 2 includes a metal bezel having a lower surface and that the bezel opposes another portion of the device housing. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 95 purports to characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 95.

96. In response to the allegations of Paragraph 96 of Garmin's Counterclaims, Suunto denies that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include "an electrically nonconductive ring between the lower surface of the bezel and the top surface of the side wall," as alleged. Suunto further denies that any such products include the recited side wall formed of electrically conductive material having a top surface including a plurality of electrical ground terminals. Suunto admits that such products include an electrically nonconductive ringlike case component beneath a bezel, but denies that any said part is positioned between the lower surface of a bezel and the top surface of a side wall formed of electrically conductive material as alleged. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 96 purports to characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no

33

response is required. Suunto denies each and every remaining allegation contained in Paragraph 96.

97. In response to the allegations of Paragraph 97 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein. Suunto further denies that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical satisfy the cited claim limitation, including because such products do not include a side wall that is both formed of electrically conductive material and has a top surface including a plurality of electrical ground terminals, as required by the claims. Suunto admits that its products, including the Suunto Vertical 2, include an antenna, but denies that any such antenna, including any structures identified by Garmin as examples, satisfies the recited claim limitation. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 97 purports to characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 97.

98. In response to the allegations of Paragraph 98 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include an electronic signal terminal. To the extent Paragraph 98 purports to characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations contained in Paragraph 98.

99. In response to the allegations of Paragraph 99, Suunto admits that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto

34

Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include a GPS receiver, which is attached to a PCB. Suunto admits that a product page for the Suunto Vertical 2 states that it includes "GPS Tracking & Navigation" and identifies "Satellite Systems" as "GPS, GLONASS, GALILEO, QZSS, BEIDOU." Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 99 purports to characterize the content of publicly available materials, including statements on Suunto's website, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 99 purports to characterize or apply provisions of law, characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 99.

100.    In response to the allegations of Paragraph 100, Suunto denies that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical satisfy the cited claim limitation, as alleged. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 100 purports to characterize or interpret any claim of the '299 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 100.

101.    In response to the allegations of Paragraph 101 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Suunto has infringed any claim of the '299 Patent or that Counterclaim-Plaintiffs have suffered any injury or are entitled to damages under 35 U.S.C. § 284. To the extent Paragraph 101 purports to characterize or apply

35

provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 101.

102.    In response to the allegations of Paragraph 102 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Counterclaim-Plaintiffs will be irreparably harmed, that they are entitled to injunctive relief under 35 U.S.C. § 283, or that they lack an adequate remedy at law. To the extent Paragraph 102 purports to characterize or apply provisions of law or assert entitlement to equitable relief, it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 102.

## COUNTERCLAIM COUNT II
### (SUUNTO'S INFRINGEMENT OF THE '925 PATENT)

103.    In response to the allegations of Paragraph 103 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

104.    In response to the allegations of Paragraph 104 of Garmin's Counterclaims, Suunto denies that it has made, used, offered for sale, sold, or imported any product that infringes any claim of U.S. Patent No. 10,276,925, whether literally or under the doctrine of equivalents, and denies any remaining allegations of Paragraph 104.

105.    In response to the allegations of Paragraph 105 of Garmin's Counterclaims, Suunto denies that it has induced or contributed to infringement of any claim of U.S. Patent No. 10,276,925 under 35 U.S.C. § 271(b), whether literally or under the doctrine of equivalents, and denies any remaining allegations of Paragraph 105.

106.    In response to the allegations of Paragraph 106 of Garmin's Counterclaims, Suunto admits that on or about December 5, 2025, it received a letter from Garmin, which Garmin's Counterclaims refer to as the "Garmin Notice Letter." To the extent Paragraph 106 relies on or

36

characterizes the Garmin Notice Letter or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies each and every other allegation contained therein, including that it is actively instructing, recommending, encouraging, and/or suggesting its customers practice one or more claims of the '925 Patent under 35 U.S.C. § 271(b). Suunto further denies that it has provided any instructions, recommendations, encouragement, or suggestions that result in the practice of any asserted claim, or that it had the requisite knowledge or intent to induce infringement. To the extent Paragraph 106 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 106.

107.   In response to the allegations of Paragraph 107 of Garmin's Counterclaims, Suunto admits that on or about December 5, 2025, it received a letter from Garmin, which Garmin's Counterclaims refer to as the "Garmin Notice Letter." To the extent Paragraph 107 relies on or characterizes the Garmin Notice Letter or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies that as of December 5, 2025, it set out to release products that follow Garmin's innovations and that it would have been aware of Garmin's patents as part of its research. Suunto further denies that allegations based on "information and belief" establish the knowledge or intent required under the law. To the extent Paragraph 107 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 107.

108.   In response to the allegations of Paragraph 108 of Garmin's Counterclaims, Suunto denies the allegations of said paragraph.

109.    In response to the allegations of Paragraph 109 of Garmin's Counterclaims, Suunto admits that Claim 1 of U.S. Patent No. 10,276,925 contains the language quoted in Paragraph 109. Suunto denies any remaining allegations of Paragraph 109.

110.    In response to the allegations of Paragraph 110 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

111.    In response to the allegations of Paragraph 111 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes electronic components and may be worn on a user's wrist. Suunto further admits that it has described the Suunto Vertical 2 as an "adventure watch" that includes, among other electronic components, an AMOLED display. To the extent Paragraph 111 relies on or characterizes publicly available materials or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies that allegations based on "information and belief" or citations to publicly available materials establish that the accused products meet the preamble or any purported construction thereof. To the extent Paragraph 111 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 111.

112.    In response to the allegations of Paragraph 112 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein. Suunto further denies that Garmin's allegations based on "information and belief," inspection, or publicly available materials establish that the accused products meet this limitation. Suunto further denies that Garmin has specifically identified any structure in the accused products that constitutes a "housing" as claimed or a "side wall" as claimed, and denies that it is clear from the cited materials what component, if any, is alleged to satisfy those claim elements. Suunto further denies that allegations directed to a single product are sufficient

38

to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 112 purports to characterize the content of third-party or publicly available materials, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 112 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 112.

113.    In response to the allegations of Paragraph 113 of Garmin's Counterclaims, Suunto admits that the following watches include a printed circuit board ("PCB"), as that term had been used in the art long before the alleged priority date of the '925 Patent: Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical. Suunto denies, however, that any of those watches includes a "printed circuit board" satisfying all limitations of any claim of the '925 Patent, including a "printed circuit board positioned in the internal cavity and including a plurality of electrical ground terminals and a first electronic signal terminal," as claimed. Suunto further denies that it is clear from the cited materials what component, if any, is alleged to satisfy all elements pertaining to the claimed "printed circuit board." Suunto further denies that Garmin's allegations based on "information and belief," inspection, or publicly available materials establish that the accused products meet this limitation. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 113 purports to characterize the content of third-party or publicly available materials, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 113 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 113.

114.    In response to the allegations of Paragraph 114 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical each include a GPS receiver attached to a PCB. Suunto admits that a product page for the Suunto Vertical 2 states that it includes "GPS Tracking & Navigation" and identifies "Satellite Systems" as "GPS, GLONASS, GALILEO, QZSS, BEIDOU." Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 114 purports to characterize the content of third-party or publicly available materials, including statements on Suunto's website, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 114 purports to characterize or apply provisions of law, characterize or interpret any claim of the '925 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 114.

115.    In response to the allegations of Paragraph 115 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that any accused product satisfies the claimed "bezel formed of electrically conductive material and positioned above the nonconductive side wall, having electrical connections to two of the electrical ground terminals and having an electrical connection to the first electronic signal terminal, such that a nonconductive slot is formed between a first portion of a circumference of the bezel between the electrical connections to the two electrical ground terminals, a perimeter of the printed circuit board corresponding to the first portion of a circumference of the bezel, and the electrical connections to the two electrical ground terminals." Suunto further denies that Garmin's allegations based on "information and belief," inspection, or publicly available materials establish that the accused products meet this limitation. Suunto further denies that Garmin has identified any structure in the accused products that corresponds to a "bezel"

40

having the claimed electrical connections or forming a "nonconductive slot," and denies that it is clear from the cited materials what component, if any, is alleged to satisfy those and other cited limitations, including any purported "nonconductive side wall" and the "perimeter" limitations. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 115 purports to characterize the content of third-party or publicly available materials, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 115 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 115.

116.     In response to the allegations of Paragraph 116 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that any accused product satisfies the claimed "first antenna formed at least partially by the first portion of a circumference of the bezel, the first antenna configured to wirelessly receive the first electronic signal and communicate the first electronic signal to the location determining element." Suunto further denies that Garmin's allegations based on "information and belief," inspection, or publicly available materials establish that the accused products meet this limitation. Suunto further denies that Garmin has identified any structure in the accused products that corresponds to a "first antenna" formed from any portion of an alleged "bezel" or that performs the claimed functions, and denies that it is clear from the cited materials what component, if any, is alleged to satisfy those limitations. Suunto further denies that Garmin's identification of any particular component—including any component highlighted in green or otherwise—as satisfying these limitations is accurate or sufficient. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 116 purports to characterize the content of third-party or

41

publicly available materials, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 116 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 116.

117.    In response to the allegations of Paragraph 117 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that any accused product satisfies the claimed limitation requiring that a "nonconductive slot corresponds to a portion of the nonconductive side wall." Suunto further denies that Garmin's allegations based on "information and belief," inspection, or publicly available materials establish that the accused products meet this limitation. Suunto further denies that Garmin has identified any structure in the accused products that corresponds to a "nonconductive slot" or a "nonconductive side wall," and denies that it is clear from the cited materials what component, if any, is alleged to satisfy those limitations or how any such structures purportedly correspond to one another. Suunto further denies that Garmin's identification of any particular feature—including the area highlighted in orange—as satisfying these limitations is accurate or sufficient. Suunto further denies that allegations directed to a single product are sufficient to establish that all accused products satisfy the claimed limitations. To the extent Paragraph 117 purports to characterize the content of third-party or publicly available materials, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. To the extent Paragraph 117 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 117.

118.    In response to the allegations of Paragraph 118 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Suunto has infringed any claim

of the '925 Patent or that Counterclaim-Plaintiffs have suffered any injury or are entitled to damages under 35 U.S.C. § 284. To the extent Paragraph 118 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 118.

119.  In response to the allegations of Paragraph 119 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Counterclaim-Plaintiffs will be irreparably harmed, that they are entitled to injunctive relief under 35 U.S.C. § 283, or that they lack an adequate remedy at law. To the extent Paragraph 119 purports to characterize or apply provisions of law or assert entitlement to equitable relief, it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 119.

### COUNTERCLAIM COUNT III
### (SUUNTO'S INFRINGEMENT OF THE '794 PATENT)

120.  In response to the allegations of Paragraph 120 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

121.  In response to the allegations of Paragraph 121 of Garmin's Counterclaims, Suunto denies that it has made, used, offered for sale, sold, or imported any product that infringes any claim of U.S. Patent No. 10,856,794, either literally or under the doctrine of equivalents. Suunto further states that it has not sold or imported the Ambit3 Vertical in or into the United States since 2020. Suunto further states that certain functionalities in the Ambit3 Vertical were developed pursuant to a license agreement with Firstbeat Technologies Oy, which that entity purported to terminate effective as of December 20, 2023. To the extent Paragraph 121 purports to characterize or interpret any claim of the '794 Patent or asserts legal conclusions under 35 U.S.C. § 271(a), it

states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 121.

122. In response to the allegations of Paragraph 122 of Garmin's Counterclaims, Suunto denies that it has induced or contributed to infringement of any claim of U.S. Patent No. 10,856,794 under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents. To the extent Paragraph 122 purports to characterize or interpret any claim of the '794 Patent or asserts legal conclusions under 35 U.S.C. § 271(b), it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 122.

123. In response to the allegations of Paragraph 123 of Garmin's Counterclaims, Suunto admits that on or about December 5, 2025, it received a letter from Garmin, which Garmin's Counterclaims refer to as the "Garmin Notice Letter." To the extent Paragraph 123 relies on or characterizes the Garmin Notice Letter or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies each and every other allegation contained therein, including that it has induced infringement of any claim of U.S. Patent No. 10,856,794 under 35 U.S.C. § 271(b), including by instructing, recommending, encouraging, and/or suggesting that any third party practice any claim of the '794 Patent. Suunto further denies that it has provided any instructions, recommendations, encouragement, or suggestions that result in the practice of any asserted claim, or that it had the requisite knowledge or intent to induce infringement. To the extent Paragraph 123 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 123.

124. In response to the allegations of Paragraph 124 of Garmin's Counterclaims, Suunto admits that on or about December 5, 2025, it received a letter from Garmin, which Garmin's

44

Counterclaims refer to as the "Garmin Notice Letter." To the extent Paragraph 124 relies on or characterizes the Garmin Notice Letter or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies that, as of December 5, 2025, it set out to release products that follow Garmin's innovations or that it would have been aware of Garmin's patents as part of its research. Suunto further denies that allegations based on "information and belief" establish the knowledge or intent required under the law. To the extent Paragraph 124 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 124.

125.    In response to the allegations of Paragraph 125 of Garmin's Counterclaims, Suunto denies the allegations of said paragraph.

126.    In response to the allegations of Paragraph 126 of Garmin's Counterclaims, Suunto admits that Claim 5 of U.S. Patent No. 10,856,794 contains the language quoted in Paragraph 126. Suunto denies any remaining allegations of Paragraph 126.

127.    In response to the allegations of Paragraph 127 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

128.    In response to Paragraph 128 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical are capable of determining a cardiorespiratory fitness metric, such as $VO_2max$. Suunto further admits that the Ambit3 Vertical is capable of displaying a running performance level. Suunto further admits that its manual for the Suunto Vertical 2 contains the quoted language referenced in Paragraph 128 for that product. To the extent Paragraph 128 purports to characterize, interpret, or construe the preamble of any claim

45

of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 128.

129.    In response to the allegations of Paragraph 129 of Garmin's Counterclaims, Suunto admits that the Suunto Ambit3 Vertical, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include interfaces that permit users to view and select sport modes. Suunto further admits that its user guide for the Suunto Vertical 2 contains the quoted language referenced in Paragraph 129. Suunto denies that its products satisfy the claim limitation of "an interface device containing input devices for entering optional user-specific starting parameters before training, and a feedback device for providing feedback," as alleged, and further denies that the cited materials demonstrate the same. To the extent Paragraph 129 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 129.

130.    In response to the allegations of Paragraph 130 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical are capable of recording exercise data. Suunto further admits that its user guide for the Suunto Vertical 2 contains the quoted language referenced in Paragraph 130. Suunto denies that the cited materials demonstrate that its products include "a memory register for recording the values of the said parameters and the calculation variables," as alleged. To the extent Paragraph 130 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 130.

131.    In response to the allegations of Paragraph 131 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include functionality for measuring and recording heart rate and providing heart rate information during exercise. Suunto further admits that the cited web page for the Suunto Vertical 2 describes "improved heart rate tracking" and states that its features include "[h]eart rate measured from wrist" and a "[h]eart rate graph in real time." Suunto denies that the cited materials demonstrate that its products include the claimed "first means for measuring and recording a variable proportional to physiological intensity in periods and for storing each measured physiological intensity in the memory register," as alleged. To the extent Paragraph 131 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 131.

132.    In response to the allegations of Paragraph 132 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical support certain external sensors and accessories capable of measuring metrics such as cycling power and other activity-related data. Suunto further admits that the cited materials state that the Suunto Vertical 2 supports pods and sensors, including sensors capable of measuring metrics such as cycling power. Suunto denies that the cited materials demonstrate that its products include the claimed "second means for registering and recording external work output simultaneously relative to the measured physiological intensity on each period, and storing each measured external output in the memory register," including any temporal correspondence

between external work output and measured physiological intensity on each period, as alleged. To the extent Paragraph 132 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 132.

133. In response to the allegations of Paragraph 133 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical calculate and provide certain training metrics and analytics, such as Training Stress Score (TSS) and related performance metrics. Suunto further admits that certain Suunto materials discuss training metrics such as TSS and Normalized Power. Suunto denies that the Suunto Ambit3 Vertical calculated or provided a Training Stress Score. Suunto admits that the Suunto Vertical 2 user guide cited by Garmin refers to a "Training Stress Score," but denies that it contains the additional quoted language or characterizations referenced in Paragraph 133. Suunto denies that the cited materials demonstrate that its products include the claimed "third means for determining whether the physiological intensity has stabilized relative to the external work output on the measured period in order to accept the period," as alleged. To the extent Paragraph 133 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 133.

134. In response to the allegations of Paragraph 134 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical provide certain training metrics and analytics, such as Training Stress Score (TSS), threshold metrics, and related performance metrics. Suunto admits that the Ambit3 Vertical provides certain performance

48

metrics, such as running performance level, but denies that that product calculates or provides Training Stress Score. Suunto further admits that certain Suunto materials discuss metrics such as TSS and threshold values. Suunto admits that the Suunto Vertical 2 user guide cited by Garmin refers to a "Training Stress Score," and that its excerpt for Section 3.20 from the Suunto Vertical 2 user guide is accurate, but denies that it contains the additional quoted language or characterizations referenced in Paragraph 134, including any reference to Normalized Power. Suunto denies that the cited materials demonstrate that its products include the claimed "fourth means for determining the representativeness of the values of the intensity and external work recorded from simultaneous periods, in order to determine an accepted period in terms of fitness level, where the representative periods are those periods that have the following properties: the physiological intensity must have stabilized relative to the external work output, the external work output must be within a preselected range, and the physiological intensity must be greater than a set criterion (x % HRmax)," including any determination of representative periods based on the recited criteria, as alleged. To the extent Paragraph 134 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 134.

135.    In response to the allegations of Paragraph 135 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical provide certain training metrics and analytics, such as Training Stress Score (TSS), $VO_2max$ estimates, Chronic Training Load (CTL), and related performance metrics. Suunto admits that the Ambit3 Vertical provides certain performance metrics, including running performance level, which uses an estimate of the user's $VO_2max$, but denies that the product calculates or provides Training Stress

49

Score. Suunto further admits that certain Suunto materials state that TSS is based on duration and intensity and that such metrics may be used to derive additional performance metrics. Suunto admits that TSS is based on the duration and an intensity (heart-rate based or external workload based) of a training session. Suunto further admits that certain user guides for the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical describe a training widget that provides information on the training load for the current week, including weighted averages, chronic training load, and acute training loads. Suunto denies that the cited materials demonstrate that its products include the claimed "fifth means for defining a fitness-level estimate for each accepted period, using a modelled function and the stored physiological intensity and stored measured external output in the memory register, and for storing each defined fitness level estimate as accepted data, and to define a fitness index in the memory register as an average of the defined fitness level estimates," as alleged. To the extent Garmin alleges that any Firstbeat technology provided by Firstbeat loaded on the Ambit3 Vertical practices this claim limitation, Suunto lacks knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies it. To the extent Paragraph 135 purports to characterize, interpret, or construe any claim of the '794 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 135.

136.    In response to the allegations of Paragraph 136 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Suunto has infringed any claim of the '794 Patent or that Counterclaim-Plaintiffs have suffered any injury or are entitled to damages under 35 U.S.C. § 284. To the extent Paragraph 136 purports to characterize or apply

provisions of law, it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 136.

137.    In response to the allegations of Paragraph 137 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Counterclaim-Plaintiffs will be irreparably harmed, that they are entitled to injunctive relief under 35 U.S.C. § 283, or that they lack an adequate remedy at law. To the extent Paragraph 137 purports to characterize or apply provisions of law or assert entitlement to equitable relief, it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 137.

## COUNTERCLAIM COUNT IV
### (SUUNTO'S INFRINGEMENT OF THE '351 PATENT)

138.    In response to the allegations of Paragraph 138 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

139.    In response to the allegations of Paragraph 139 of Garmin's Counterclaims, Suunto denies that it has made, used, offered for sale, sold, or imported any product that infringes any claim of U.S. Patent No. 11,318,351, either literally or under the doctrine of equivalents. To the extent Paragraph 139 purports to characterize or interpret any claim of the '351 Patent or asserts legal conclusions under 35 U.S.C. § 271(a), it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 139.

140.    In response to the allegations of Paragraph 140 of Garmin's Counterclaims, Suunto denies that it has induced or contributed to infringement of any claim of U.S. Patent No. 11,318,351 under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents. To the extent Paragraph 140 purports to characterize or interpret any claim of the '351 Patent or asserts

51

legal conclusions under 35 U.S.C. § 271(b), it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 140.

141. In response to the allegations of Paragraph 141 of Garmin's Counterclaims, Suunto admits that on or about December 5, 2025, it received a letter from Garmin, which Garmin's Counterclaims refer to as the "Garmin Notice Letter." To the extent Paragraph 141 relies on or characterizes the Garmin Notice Letter or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies each and every other allegation contained therein, including that it has induced infringement of any claim of U.S. Patent No. 11,318,351 under 35 U.S.C. § 271(b), including by instructing, recommending, encouraging, and/or suggesting that any third party practice any claim of the '351 Patent. Suunto further denies that it has provided any instructions, recommendations, encouragement, or suggestions that result in the practice of any asserted claim, or that it had the requisite knowledge or intent to induce infringement. To the extent Paragraph 141 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 141.

142. In response to the allegations of Paragraph 142 of Garmin's Counterclaims, Suunto admits that on or about December 5, 2025, it received a letter from Garmin, which Garmin's Counterclaims refer to as the "Garmin Notice Letter." To the extent Paragraph 142 relies on or characterizes the Garmin Notice Letter or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies that, as of December 5, 2025, it set out to release products that follow Garmin's innovations or that it would have been aware of Garmin's patents as part of its research. Suunto further denies that allegations based on "information and belief" establish the knowledge or intent required under the law. To the extent

52

Paragraph 142 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 142.

143.    In response to the allegations of Paragraph 143 of Garmin's Counterclaims, Suunto denies the allegations of said paragraph.

144.    In response to the allegations of Paragraph 144 of Garmin's Counterclaims, Suunto admits that Claim 16 of U.S. Patent No. 11,318,351 contains the language quoted in Paragraph 144. Suunto denies any remaining allegations of Paragraph 144.

145.    In response to the allegations of Paragraph 145 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

146.    In response to the allegations of Paragraph 146 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include a recovery training widget. Suunto further admits that the Suunto Run includes a recovery widget. To the extent Paragraph 146 alleges that the Ambit3 Vertical includes a recovery training widget and/or recovery widget, Suunto denies that allegation. Suunto further admits that certain user guides for a subset of the products referenced in Paragraph 146 contain the quoted language referenced in that paragraph. To the extent Paragraph 146 purports to characterize or interpret the preamble of any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 146.

147.    In response to the allegations of Paragraph 147 of Garmin's Counterclaims, Suunto admits that the Ambit3 Vertical, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical

include a heart rate sensor that may be used to measure a user's heart rate. Suunto further admits that certain user guides and/or product pages for a subset of these products contain the quoted language referenced in Paragraph 147. To the extent Paragraph 147 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 147.

148. In response to the allegations of Paragraph 148 of Garmin's Counterclaims, Suunto admits that the Ambit3 Vertical, Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical each include sensors, including a GPS sensor, that can be used to monitor activity. Suunto further admits that each of the above-referenced products, except for the Ambit3 Vertical, calculates a Training Stress Score that uses exercise duration. Suunto further admits that certain user manuals for a subset of the above-referenced products reflect this functionality. Suunto denies that the manual for the Ambit3 Vertical reflects such functionality. To the extent Paragraph 148 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 148.

149. In response to the allegations of Paragraph 149 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include a progress widget that provides users with data to help increase training load over time and that such devices include memory for storing data. Suunto further admits that certain user guides for these products state that the progress widget "provides you with data that helps you to increase your training load over a longer period of time." Suunto admits that the Suunto Ambit3 Vertical includes memory, but denies that it includes such a progress widget or that its user guide for that product contains

the cited language. To the extent Paragraph 149 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 149.

150. In response to the allegations of Paragraph 150 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical each include a data processing unit, a heart rate sensor, and memory. Suunto further admits that certain user guides for a subset of these products contain the cited text referenced in Paragraph 150, but denies that the user guide for the Suunto Ambit3 Vertical contains such text. Suunto further states that, to the extent Paragraph 150 alleges that the data processing unit is configured to perform the remaining limitations of the asserted claims, Suunto incorporates by reference its responses to Paragraphs 151 through 156. To the extent Paragraph 150 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 150.

151. In response to the allegations of Paragraph 151 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical are capable of measuring a user's heart rate. Suunto further admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical are capable of determining "intensity zones" on a scale of 1 to 5 during exercise, and that such intensity zones are based on a user's maximum heart rate (Max HR). Suunto denies that the Suunto Ambit3 Vertical includes such intensity zones. To the extent Paragraph 151 purports to characterize, interpret, or construe any claim of the '351

Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 151.

152. In response to the allegations of Paragraph 152 of Garmin's Counterclaims, Suunto denies that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical determine "an instant performance level of the user based on the exercise intensity and the external workload," as alleged. Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical are capable of determining a Training Stress Score (TSS), but denies that such functionality satisfies this claim limitation. Suunto denies that the Ambit3 Vertical determines a Training Stress Score. Suunto admits that certain user guides for the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical state that "[e]very training session gets a Training Stress Score (TSS) (based on the duration and the intensity) …," but denies that its user guides for the Ambit3 Vertical contain this language. To the extent Paragraph 152 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. To the extent Garmin alleges that any Firstbeat technology provided by Firstbeat and loaded on the Ambit3 Vertical practices this claim limitation, Suunto lacks knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies it. Suunto denies any remaining allegations of Paragraph 152.

153. In response to the allegations of Paragraph 153 of Garmin's Counterclaims, Suunto denies that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut

Vertical compare "the stored earlier performance level to the determined instant performance level," as alleged. Suunto further denies that said products determine an "instant performance level of the user based on the exercise intensity and the external workload," as required by the claims, and therefore cannot perform the recited comparison for at least this reason. Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include a progress widget that helps users increase training load over time, but denies that the Suunto Ambit3 Vertical includes such a progress widget. To the extent Paragraph 153 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. To the extent Garmin alleges that any Firstbeat technology provided by Firstbeat loaded on the Ambit3 Vertical practices this claim limitation, Suunto lacks knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies it. Suunto denies each and every remaining allegation contained in Paragraph 153.

154.    In response to the allegations of Paragraph 154 of Garmin's Counterclaims, Suunto denies that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical calculate "a readiness index based on the comparison of the earlier performance level to the instant performance level," as alleged. Suunto admits that the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical include a Training widget that provides Chronic Training Load and Acute Training Load based on training performance over time, but denies that such functionality satisfies the claimed limitation. Suunto further admits that the Suunto Run can determine Chronic Training Load. Suunto further denies that the Suunto Ambit3 Vertical includes such a Training

57

widget or determines Chronic Training Load or Acute Training Load. To the extent Paragraph 154 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. To the extent Garmin alleges that any Firstbeat technology provided by Firstbeat loaded on the Ambit3 Vertical practices this claim limitation, Suunto lacks knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies it. Suunto denies each and every remaining allegation contained in Paragraph 154.

155.    In response to the allegations of Paragraph 155 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical determine a recovery time, but denies that said products determine "a recovery time for the instant exercise session based on the calculated readiness index, the determined recovery time being a duration of time between the completion of the instant exercise session and the start of a next exercise session," as alleged. Suunto admits that certain manuals for the Suunto 9 Peak Pro, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical describe a Recovery training widget that "will … tell you how your recovery matches your current training load." Suunto admits that a manual for the Suunto Run discloses a recovery widget. Suunto further admits that certain webpages for a subset of the products Garmin accuses of infringing the '351 Patent state that those products can provide a "training based recovery time." To the extent Garmin alleges that any Firstbeat technology provided by Firstbeat and loaded on the Ambit3 Vertical practices this claim limitation, Suunto lacks knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies it. To the extent Paragraph 155 purports to characterize, interpret, or construe any

claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 155.

156.    In response to the allegations of Paragraph 156 of Garmin's Counterclaims, Suunto admits that the Suunto 9 Peak Pro, Suunto Ambit3 Vertical, Suunto Ocean, Suunto Race, Suunto Race 2, Suunto Race S, Suunto Run, Suunto Vertical, Suunto Vertical 2, and Suunto x Mammut Vertical determine a recovery time, but denies that said products are configured by it to provide "feedback including the recovery time for the instant exercise session throughout the instant exercise session," as alleged. Suunto admits that certain of said products include a resources widget that provides users with resource levels. Suunto denies that the Ambit3 Vertical includes a resources widget. To the extent Paragraph 156 purports to characterize, interpret, or construe any claim of the '351 Patent, it states a legal conclusion to which no response is required. Suunto denies any remaining allegations of Paragraph 156.

157.    In response to the allegations of Paragraph 157 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Suunto has infringed any claim of the '351 Patent or that Counterclaim-Plaintiffs have suffered any injury or are entitled to damages under 35 U.S.C. § 284. To the extent Paragraph 157 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 157.

158.    In response to the allegations of Paragraph 158 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Counterclaim-Plaintiffs will be irreparably harmed, that they are entitled to injunctive relief under 35 U.S.C. § 283, or that they lack an adequate remedy at law. To the extent Paragraph 158 purports to characterize or apply provisions of law or assert entitlement to equitable relief, it states legal conclusions to which no

59

response is required. Suunto denies each and every remaining allegation contained in Paragraph 158.

## COUNTERCLAIM COUNT V
### (DONGGUAN LIESHENG'S INFRINGEMENT OF THE '351 PATENT)

159.    In response to the allegations of Paragraph 159 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

160.    In response to the allegations of Paragraph 160 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 160 and, on that basis, denies them.

161.    In response to the allegations of Paragraph 161 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 161 and, on that basis, denies them.

162.    In response to the allegations of Paragraph 162 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 162 and, on that basis, denies them.

163.    In response to the allegations of Paragraph 163 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 163 and, on that basis, denies them.

164.    In response to the allegations of Paragraph 164 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 164 and, on that basis, denies them.

165.    In response to the allegations of Paragraph 165 of Garmin's Counterclaims, Suunto admits that Claim 16 of U.S. Patent No. 11,318,351 contains the language quoted in Paragraph 165. Suunto denies any remaining allegations of Paragraph 165.

166.    In response to the allegations of Paragraph 166 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 166 and, on that basis, denies them.

167.    In response to the allegations of Paragraph 167 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 167 and, on that basis, denies them.

168.    In response to the allegations of Paragraph 168 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 168 and, on that basis, denies them.

169.    In response to the allegations of Paragraph 169 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 169 and, on that basis, denies them.

170.    In response to the allegations of Paragraph 170 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 170 and, on that basis, denies them.

171.    In response to the allegations of Paragraph 171 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 171 and, on that basis, denies them.

172.    In response to the allegations of Paragraph 172 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 172 and, on that basis, denies them.

173.    In response to the allegations of Paragraph 173 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 173 and, on that basis, denies them.

174.    In response to the allegations of Paragraph 174 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 174 and, on that basis, denies them.

175.    In response to the allegations of Paragraph 175 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent

a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 175 and, on that basis, denies them.

176. In response to the allegations of Paragraph 176 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 176 and, on that basis, denies them.

177. In response to the allegations of Paragraph 177 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 177 and, on that basis, denies them.

178. In response to the allegations of Paragraph 178 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 178 and, on that basis, denies them.

179. In response to the allegations of Paragraph 179 of Garmin's Counterclaims, Suunto responds that the allegations are directed to Dongguan Liesheng and not to Suunto. To the extent a response is required, Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 179 and, on that basis, denies them.

**COUNTERCLAIM COUNT VI**
**(SUUNTO'S INFRINGEMENT OF THE '874 PATENT)**

180. In response to the allegations of Paragraph 180 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

181.     In response to the allegations of Paragraph 181 of Garmin's Counterclaims, Suunto denies that it has made, used, offered for sale, sold, or imported any product that infringes any claim of U.S. Patent No. 11,956,874, whether literally or under the doctrine of equivalents, and denies any remaining allegations of Paragraph 181.

182.     In response to the allegations of Paragraph 182 of Garmin's Counterclaims, Suunto denies that it has induced or contributed to infringement of any claim of U.S. Patent No. 11,956,874 under 35 U.S.C. § 271(b), whether literally or under the doctrine of equivalents, and denies any remaining allegations of Paragraph 182.

183.     In response to the allegations of Paragraph 183 of Garmin's Counterclaims, Suunto admits that on or about December 29, 2025, Garmin filed its Answer and Counterclaims (D.I. 14). To the extent Paragraph 183 relies on or characterizes Garmin's Answer and Counterclaims or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies each and every other allegation contained therein, including that it has induced infringement of any claim of U.S. Patent No. 11,956,874 under 35 U.S.C. § 271(b), including by instructing, recommending, encouraging, and/or suggesting that any third party practice any claim of the '874 Patent. Suunto further denies that it has provided any instructions, recommendations, encouragement, or suggestions that result in the practice of any asserted claim, or that it had the requisite knowledge or intent to induce infringement. To the extent Paragraph 183 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 183.

184.     In response to the allegations of Paragraph 184 of Garmin's Counterclaims, Suunto admits that on or about December 29, 2025, Garmin filed its Answer and Counterclaims (D.I. 14).

64

To the extent Paragraph 184 relies on or characterizes Garmin's Answer and Counterclaims or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto further states that the only product that Garmin accuses of infringing the '874 Patent, the Vertical 2, was released before that date. Suunto denies that, as of December 29, 2025, it set out to release products that follow Garmin's innovations or that it would have been aware of Garmin's patents as part of its research. Suunto further denies that allegations based on "information and belief" establish the knowledge or intent required under the law. To the extent Paragraph 184 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 184.

185.    In response to the allegations of Paragraph 185 of Garmin's Counterclaims, Suunto denies the allegations of said paragraph.

186.    In response to the allegations of Paragraph 186 of Garmin's Counterclaims, Suunto admits that Claim 1 of U.S. Patent No. 11,956,874 contains the language quoted in Paragraph 186. Suunto denies any remaining allegations of Paragraph 186.

187.    In response to the allegations of Paragraph 187 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

188.    In response to the allegations of Paragraph 188 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes electronic components and may be worn on a user's wrist. Suunto further admits that it has described the Suunto Vertical 2 as an "adventure watch" and that the Suunto Vertical 2 includes an AMOLED display. To the extent Paragraph 188 relies on or characterizes publicly available materials or other documents, the documents speak for themselves and Suunto does not adopt Garmin's characterization thereof. Suunto denies that

allegations based on "information and belief" or citations to publicly available materials establish that the accused products meet the preamble or any purported construction thereof. To the extent Paragraph 188 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 188.

189. In response to the allegations of Paragraph 189 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes a case or housing, glass, and bezel. To the extent Paragraph 189 purports to characterize or interpret any claim of the '874 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 189.

190. In response to the allegations of Paragraph 190 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes a touch screen that displays a control panel allowing a user to adjust brightness, select a light color, and select a flashlight mode. To the extent Paragraph 190 alleges that individual LEDs can selectively change light color, Suunto denies that allegation. To the extent Paragraph 190 alleges that the brightness of all LEDs in the flashlight can be adjusted, Suunto denies that allegation. To the extent Paragraph 190 purports to characterize, interpret, or construe any claim of the '874 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 190.

191. In response to the allegations of Paragraph 191 of Garmin's Counterclaims, Suunto denies that the Suunto Vertical 2 includes "first light emitting element and a second light emitting element, the light emitting elements positioned in the sidewall of the housing between a 10:00 and a 2:00 position on the housing" as alleged. To the extent Paragraph 191 purports to characterize or

66

interpret any claim of the '874 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 191.

192. In response to the allegations of Paragraph 192 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes a processor within its case or housing, and that the watch contains hardware and runs software. Suunto further states that, to the extent Paragraph 192 alleges that the processor is operable to perform the remaining limitations of the asserted claims, Suunto incorporates by reference its responses to Paragraphs 193 and 194. To the extent Paragraph 192 purports to characterize or interpret any claim of the '874 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 192.

193. In response to the allegations of Paragraph 193 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes functionality whereby light emitting elements may be illuminated based on user input. To the extent Paragraph 193 alleges that individual LEDs can selectively change light color, Suunto denies that allegation. To the extent Paragraph 193 alleges that the brightness of all LEDs in the flashlight can be adjusted, Suunto denies that allegation. To the extent Paragraph 193 purports to characterize or interpret any claim of the '874 Patent, it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 193.

194. In response to the allegations of Paragraph 194 of Garmin's Counterclaims, Suunto admits that the Suunto Vertical 2 includes functionality whereby a user can activate the flashlight, but denies that the user or processor can select or change the light color of an LED. Suunto further admits that a certain user guide for the Suunto Vertical 2 contains the quoted text in Paragraph 194. To the extent Paragraph 194 purports to characterize or interpret any claim of the '874 Patent,

it states a legal conclusion to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 194.

195.    In response to the allegations of Paragraph 195 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Suunto has infringed any claim of the '874 Patent or that Counterclaim-Plaintiffs have suffered any injury or are entitled to damages under 35 U.S.C. § 284. To the extent Paragraph 195 purports to characterize or apply provisions of law, it states a legal conclusion to which no response is required. Except as expressly admitted herein, Suunto denies the remaining allegations of Paragraph 195.

196.    In response to the allegations of Paragraph 196 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein, including that Counterclaim-Plaintiffs will be irreparably harmed, that they are entitled to injunctive relief under 35 U.S.C. § 283, or that they lack an adequate remedy at law. To the extent Paragraph 196 purports to characterize or apply provisions of law or assert entitlement to equitable relief, it states legal conclusions to which no response is required. Suunto denies each and every remaining allegation contained in Paragraph 196.

### COUNTERCLAIM COUNT VII
### (DECLARATION OF NON-INFRINGEMENT BY
### GARMIN OF SUUNTO'S '241 PATENT)

197.    In response to the allegations of Paragraph 197 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

198.    In response to the allegations of Paragraph 198 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

199.    In response to the allegations of Paragraph 199 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

68

200.    In response to the allegations of Paragraph 200 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

201.    In response to the allegations of Paragraph 201 of Garmin's Counterclaim, Suunto admits that it has asserted the '241 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '241 Patent against them. To the extent the remaining allegations of Paragraph 201 contain legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

202.    In response to the allegations of Paragraph 202 of Garmin's Counterclaims, Suunto denies that Garmin is entitled to a declaratory judgment of non-infringement of the asserted claims of the '241 Patent. Suunto further denies that the '241 Patent is not infringed and affirmatively states that, as set forth in the Amended Complaint, Garmin infringes at least the asserted claims of the '241 Patent. To the extent Paragraph 202 contains legal conclusions, no response is required, but to the extent a response is deemed necessary, Suunto denies the same.

203.    In response to the allegations of Paragraph 203 of Garmin's Counterclaim, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '241 Patent, whether asserted or unasserted, is not infringed. Suunto affirmatively states that Garmin infringes at least the asserted claims of the '241 Patent as set forth in the Amended Complaint. To the extent Paragraph 203 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

204.    In response to the allegations of Paragraph 204 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

205.    In response to the allegations of Paragraph 205 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to an award of attorneys' fees under 35 U.S.C. § 285 and denies that this case is exceptional.

## COUNTERCLAIM COUNT VIII
## (DECLARATION OF INVALIDITY OF SUUNTO'S '241 PATENT)

206.    In response to the allegations of Paragraph 206 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

207.    In response to the allegations of Paragraph 207 of Garmin's Counterclaims, Suunto admits that this action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, confers jurisdiction over declaratory judgment claims. Suunto denies that one or more claims of the '241 Patent are invalid for failing to meet one or more criteria for patentability or for otherwise failing to comply with one or more provisions of 35 U.S.C. § 101 et seq., including 35 U.S.C. §§ 101, 102, 103, and/or 112. Suunto further denies that the alleged inventions of the '241 Patent are anticipated and/or obvious under §§ 102 and 103, and denies that Suunto did not itself invent the subject matter claimed in the '241 Patent under § 102(f). To the extent Paragraph 207 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

208.    In response to the allegations of Paragraph 208 of Garmin's Counterclaims, Suunto admits that it has asserted the '241 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations

regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '241 Patent against them. To the extent Paragraph 208 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

209.    In response to the allegations of Paragraph 209 of Garmin's Counterclaims, Suunto admits that a controversy exists between the parties regarding the '241 Patent but denies that Garmin is entitled to a declaratory judgment that any claim of the '241 Patent, whether asserted or unasserted, is invalid or unenforceable. Suunto denies that any claim of the '241 Patent is invalid and separately denies that any claim of the '241 Patent is unenforceable. To the extent Paragraph 209 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

210.    In response to the allegations of Paragraph 210 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '241 Patent, whether asserted or unasserted, is invalid. Suunto affirmatively states that the claims of the '241 Patent are valid. To the extent Paragraph 210 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

211.    In response to the allegations of Paragraph 211 of Garmin's Counterclaims, to the extent Paragraph 211 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

212.    In response to the allegations of Paragraph 212 of Garmin's Counterclaim, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award

of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 212 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

**COUNTERCLAIM COUNT IX**
**(DECLARATION OF NON-INFRINGEMENT BY**
**GARMIN OF SUUNTO'S '306 PATENT)**

213.   In response to the allegations of Paragraph 213 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

214.   In response to the allegations of Paragraph 214 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

215.   In response to the allegations of Paragraph 215 of Garmin's Counterclaims, Suunto admits that it has asserted the '306 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '306 Patent against them. To the extent Paragraph 215 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

216.   In response to the allegations of Paragraph 216 of Garmin's Counterclaims, Suunto denies that Garmin is entitled to a declaratory judgment of non-infringement of the asserted claims of the '306 Patent. Suunto further denies that the '306 Patent is not infringed and affirmatively states that, as set forth in the Amended Complaint, Garmin infringes at least the asserted claims of the '306 Patent. To the extent Paragraph 216 contains legal conclusions, no response is required;

72

to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

217.    In response to the allegations of Paragraph 217 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '306 Patent, whether asserted or unasserted, is not infringed. Suunto affirmatively states that Garmin infringes at least the asserted claims of the '306 Patent as set forth in the Amended Complaint. To the extent Paragraph 217 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

218.    In response to the allegations of Paragraph 218 of Garmin's Counterclaims, to the extent Paragraph 218 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

219.    In response to the allegations of Paragraph 219 of Garmin's Counterclaims, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 219 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

## COUNTERCLAIM COUNT X
## (DECLARATION OF INVALIDITY OF SUUNTO'S '306 PATENT)

220.    In response to the allegations of Paragraph 220 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

221.    In response to the allegations of Paragraph 221 of Garmin's Counterclaim, Suunto admits that this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and

73

that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, confers jurisdiction over declaratory judgment claims. Suunto denies that one or more claims of the '306 Patent are invalid for failing to meet one or more criteria for patentability or for otherwise failing to comply with one or more provisions of 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. §§ 101, 102, 103, and/or 112. Suunto further denies that the alleged inventions of the '306 Patent are anticipated and/or obvious under §§ 102 and 103, and denies that Suunto did not itself invent the subject matter claimed in the '306 Patent under § 102(f). To the extent that the remaining allegations of Paragraph 221 contain legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

222. In response to the allegations of Paragraph 222 of Garmin's Counterclaims, Suunto admits that it has asserted the '306 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '306 Patent against them. To the extent the remaining allegations of Paragraph 222 contain legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

223. In response to the allegations of Paragraph 223 of Garmin's Counterclaim, Suunto admits that a controversy exists between the parties regarding the '306 Patent but denies that Garmin is entitled to a declaratory judgment that any claim of the '306 Patent, whether asserted or unasserted, is invalid or unenforceable. Suunto denies that any claim of the '306 Patent is invalid, and separately denies that any claim of the '306 Patent is unenforceable. To the extent Paragraph

74

223 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

224.    In response to the allegations of Paragraph 224 of Garmin's Counterclaim, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '306 Patent, whether asserted or unasserted, is invalid. Suunto affirmatively states that the claims of the '306 Patent are valid. To the extent Paragraph 224 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

225.    In response to the allegations of Paragraph 225 of Garmin's Counterclaim, to the extent Paragraph 225 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every allegation contained therein.

226.    In response to the allegations of Paragraph 226 of Garmin's Counterclaims, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 226 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

### COUNTERCLAIM COUNT XI
### (DECLARATION OF NON-INFRINGEMENT BY GARMIN OF SUUNTO'S '774 PATENT)

227.    In response to the allegations of Paragraph 227 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

228.    In response to the allegations of Paragraph 228 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

229.    In response to the allegations of Paragraph 229 of Garmin's Counterclaims, Suunto admits that it has asserted the '774 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '774 Patent against them. To the extent Paragraph 229 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

230.    In response to the allegations of Paragraph 230 of Garmin's Counterclaims, Suunto denies that Garmin is entitled to a declaratory judgment of non-infringement of the asserted claims of the '774 Patent. Suunto further denies that the '774 Patent is not infringed and affirmatively states that, as set forth in the Amended Complaint, Garmin infringes at least the asserted claims of the '774 Patent. To the extent Paragraph 230 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

231.    In response to the allegations of Paragraph 231 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '774 Patent, whether asserted or unasserted, is not infringed. Suunto affirmatively states that Garmin infringes at least the asserted claims of the '774 Patent as set forth in the Amended Complaint. To the extent Paragraph 231 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

232.     In response to the allegations of Paragraph 232 of Garmin's Counterclaims, to the extent Paragraph 232 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

233.     In response to the allegations of Paragraph 233 of Garmin's Counterclaims, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 233 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

**COUNTERCLAIM COUNT XII**
**(DECLARATION OF INVALIDITY OF SUUNTO'S '774 PATENT)**

234.     In response to the allegations of Paragraph 234 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

235.     In response to the allegations of Paragraph 235 of Garmin's Counterclaims, Suunto admits that this action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, confers jurisdiction over declaratory judgment claims. Suunto denies that one or more claims of the '774 Patent are invalid for failing to meet one or more criteria for patentability or for otherwise failing to comply with one or more provisions of 35 U.S.C. § 101 et seq., including 35 U.S.C. §§ 101, 102, 103, and/or 112. Suunto further denies that the alleged inventions of the '774 Patent are anticipated and/or obvious under §§ 102 and 103, and denies that Suunto did not itself invent the subject matter claimed in the '774 Patent under § 102(f). To the extent Paragraph 235 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

77

236.    In response to the allegations of Paragraph 236 of Garmin's Counterclaims, Suunto admits that it has asserted the '774 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '774 Patent against them. To the extent Paragraph 236 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

237.    In response to the allegations of Paragraph 237 of Garmin's Counterclaims, Suunto admits that a controversy exists between the parties regarding the '774 Patent but denies that Garmin is entitled to a declaratory judgment that any claim of the '774 Patent, whether asserted or unasserted, is invalid or unenforceable. Suunto denies that any claim of the '774 Patent is invalid and separately denies that any claim of the '774 Patent is unenforceable. To the extent Paragraph 237 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

238.    In response to the allegations of Paragraph 238 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '774 Patent, whether asserted or unasserted, is invalid. Suunto affirmatively states that the claims of the '774 Patent are valid. To the extent Paragraph 238 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

239.    In response to the allegations of Paragraph 239 of Garmin's Counterclaims, to the extent Paragraph 239 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

240.    In response to the allegations of Paragraph 240 of Garmin's Counterclaims, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 240 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

## COUNTERCLAIM COUNT XIII
## (DECLARATION OF NON-INFRINGEMENT BY
## GARMIN OF SUUNTO'S '731 PATENT)

241.    In response to the allegations of Paragraph 241 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

242.    In response to the allegations of Paragraph 242 of Garmin's Counterclaims, Suunto denies each and every allegation contained therein.

243.    In response to the allegations of Paragraph 243 of Garmin's Counterclaims, Suunto admits that it has asserted the '731 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '731 Patent against them. To the extent Paragraph 243 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

244.    In response to the allegations of Paragraph 244 of Garmin's Counterclaims, Suunto denies that Garmin is entitled to a declaratory judgment of non-infringement of the asserted claims of the '731 Patent. Suunto further denies that the '731 Patent is not infringed and affirmatively states that, as set forth in the Amended Complaint, Garmin infringes at least the asserted claims of the '731 Patent. To the extent Paragraph 244 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

245.    In response to the allegations of Paragraph 245 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '731 Patent, whether asserted or unasserted, is not infringed. Suunto affirmatively states that Garmin infringes at least the asserted claims of the '731 Patent as set forth in the Amended Complaint. To the extent Paragraph 245 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

246.    In response to the allegations of Paragraph 246 of Garmin's Counterclaims, to the extent Paragraph 246 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

247.    In response to the allegations of Paragraph 247 of Garmin's Counterclaims, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 247 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

## COUNTERCLAIM COUNT XIV
## (DECLARATION OF INVALIDITY OF SUUNTO'S '731 PATENT)

248. In response to the allegations of Paragraph 248 of Garmin's Counterclaims, Suunto incorporates by reference its responses to the preceding paragraphs of the Counterclaims as if fully set forth herein.

249. In response to the allegations of Paragraph 249 of Garmin's Counterclaims, Suunto admits that this action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, confers jurisdiction over declaratory judgment claims. Suunto denies that one or more claims of the '731 Patent are invalid for failing to meet one or more criteria for patentability or for otherwise failing to comply with one or more provisions of 35 U.S.C. § 101 et seq., including 35 U.S.C. §§ 101, 102, 103, and/or 112. Suunto further denies that the alleged inventions of the '731 Patent are anticipated and/or obvious under §§ 102 and 103, and denies that Suunto did not itself invent the subject matter claimed in the '731 Patent under § 102(f). To the extent Paragraph 249 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

250. In response to the allegations of Paragraph 250 of Garmin's Counterclaims, Suunto admits that it has asserted the '731 Patent against Garmin Ltd. and Garmin International, Inc. Suunto lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate relationship between Garmin Ltd., Garmin Oy, and Garmin Switzerland, and on that basis denies those allegations. Suunto denies that Garmin Oy and Garmin Switzerland face a substantial risk of Suunto asserting the '731 Patent against them. To the extent Paragraph 250 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

251.    In response to the allegations of Paragraph 251 of Garmin's Counterclaims, Suunto admits that a controversy exists between the parties regarding the '731 Patent but denies that Garmin is entitled to a declaratory judgment that any claim of the '731 Patent, whether asserted or unasserted, is invalid or unenforceable. Suunto denies that any claim of the '731 Patent is invalid and separately denies that any claim of the '731 Patent is unenforceable. To the extent Paragraph 251 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

252.    In response to the allegations of Paragraph 252 of Garmin's Counterclaims, Suunto denies that Counterclaim-Plaintiffs are entitled to a judicial determination that any claim of the '731 Patent, whether asserted or unasserted, is invalid. Suunto affirmatively states that the claims of the '731 Patent are valid. To the extent Paragraph 252 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

253.    In response to the allegations of Paragraph 253 of Garmin's Counterclaims, to the extent Paragraph 253 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

254.    In response to the allegations of Paragraph 254 of Garmin's Counterclaims, Suunto denies that this case is exceptional and denies that Counterclaim-Plaintiffs are entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285 or any other relief. To the extent Paragraph 254 contains legal conclusions, no response is required; to the extent a response is deemed required, Suunto denies each and every remaining allegation contained therein.

Suunto denies that Counterclaim-Plaintiffs are entitled to any of the relief requested in their Counterclaims or any relief whatsoever.

## AFFIRMATIVE DEFENSES

Suunto raises the following affirmative defenses.

### AFFIRMATIVE DEFENSE I
### (FAILURE TO STATE A CLAIM)

1.      Garmin's Counterclaims for noninfringement (Counterclaim Counts VII, IX, XI, and XIII) fail to state a claim upon which relief may be granted. In particular, Garmin's Counterclaims fail to state a claim on which there is a justiciable action for declaratory judgment because all matters asserted therein can and should be fully adjudicated through Suunto's claims for infringement.

### AFFIRMATIVE DEFENSE II (LICENSE)

2.      Suunto's manufacture, use, offer for sale, sale, and/or importation of the Ambit3 Vertical with respect to U.S. Patent Nos. 10,856,794 and 11,318,351 was authorized under a 2017 license agreement between Suunto and Firstbeat Technologies Oy. Garmin itself alleges that said license was not terminated until 2023. Moreover, Suunto last sold or imported the Ambit3 Vertical in or into the United States in 2020. Accordingly, any alleged infringement of U.S. Patent Nos. 10,856,794 and 11,318,351 arising from Suunto's activities involving the Ambit3 Vertical occurred during the term of that license and cannot give rise to liability for infringement and/or related damages.

## AFFIRMATIVE DEFENSE III
## (NON-INFRINGEMENT OF ASSERTED GARMIN PATENTS)

3.       Suunto does not infringe any valid and enforceable claim of the Asserted Garmin Patents, directly or indirectly, literally or under the doctrine of equivalents.

## AFFIRMATIVE DEFENSE IV
## (INVALIDITY OF ASSERTED GARMIN PATENTS)

4.       The asserted claims of the Asserted Garmin Patents are invalid for failure to satisfy one or more provisions of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, 112, and/or any judicially created doctrine of invalidity.

## AFFIRMATIVE DEFENSE V
## (INVALIDITY OF U.S. PATENT NO. 10,271,299)

5.       Garmin previously accused the Ambit3 Vertical of infringing the '299 Patent. The Ambit3 Vertical was publicly released no later than January 14, 2016, which predates Garmin's alleged priority date of January 5, 2018 for the '299 Patent by nearly two years. If the Ambit3 Vertical practices the '299 Patent, and Suunto does not concede that it does, then it also anticipates or renders obvious the asserted claims of that patent.

## AFFIRMATIVE DEFENSE VI
## (FAILURE TO COMPLY WITH PATENT MARKING REQUIREMENTS)

6.       On information and belief, Garmin made, offered for sale, sold, and/or imported into the United States patented articles that practice one or more claims of the Asserted Garmin Patents. For such patented articles, Garmin and/or one or more of its licensees did not comply with the marking requirements of 35 U.S.C. § 287 by giving notice to the public that the same are patented. To the extent Garmin failed to comply with the requirements of 35 U.S.C. § 287 as to any of the Asserted Garmin Patents, Garmin cannot recover any alleged damages for infringement

84

of those patents prior to the date on which Suunto received actual notice of the alleged infringement.

## AFFIRMATIVE DEFENSE VII
## (NO ENTITLEMENT TO INJUNCTIVE RELIEF)

7.      Garmin cannot satisfy the requirements for injunctive relief under 35 U.S.C. § 283. Garmin cannot demonstrate that it has suffered or will suffer irreparable harm, that monetary damages are inadequate to compensate for any alleged injury, that the balance of hardships tips in its favor, or that the public interest would be served by an injunction. Accordingly, Garmin is not entitled to preliminary or permanent injunctive relief.

## AFFIRMATIVE DEFENSE VIII
## (ADDITIONAL DEFENSES)

8.      Any other applicable affirmative defenses as may become available or apparent during discovery and investigation.

Dated: April 13, 2026

*/s/ Ari Rafilson*
Mark Siegmund
TX Bar No. 24117055
msiegmund@cjsjlaw.com
Jack Shaw
CA Bar No. 309382
jshaw@cjsjlaw.com
William D. Ellerman
TX Bar No. 24007151
wellerman@cjsjlaw.com
Ari Rafilson
TX Bar No. 24060456
arafilson@cjsjlaw.com
Brett Mangrum
TX Bar No. 24065671
Bmangrum@CJSJLAW.com
Shuya "Grace" Yang
TX Bar No. 24144144
gyang@CJSJLAW.com
**CHERRY JOHNSON SIEGMUND JAMES PC**
7901 Fish Pond Rd, Second Floor
Waco, TX 76710
Telephone: 254.732.2242
Facsimile: 866.627.3509

***Attorneys for Plaintiff Suunto Oy***

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system on this 13th day of April 2026.

/s/ Ari Rafilson
Ari Rafilson